1  KAREN P. HEWITT
   United States Attorney
2  A. DALE BLANKENSHIP
   Assistant United States Attorney
3  California State Bar No. 235960
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-6199/(619) 235-2757 (Fax)
   Email: Dale.Blankenship@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,          )  Criminal Case No. 08CR0092-DMS
                                       )
11              Plaintiff,             )  Date:      February 15, 2008
                                       )  Time:      11:00 a.m.
12         v.                          )
                                       )  GOVERNMENT'S RESPONSE AND
13  BENJAMIN DANIEL WILLIAMS (1),      )  OPPOSITION TO DEFENDANT'S
    NATHANIEL GREGORY WILLIAMS (2),    )  MOTIONS TO:
14                                     )
               Defendants.            )  (1)  COMPEL DISCOVERY; AND
15                                     )  (2)  FILE FURTHER MOTIONS
                                       )
16                                     )
                                       )  TOGETHER WITH STATEMENT OF
17                                     )  FACTS, MEMORANDUM OF POINTS
                                       )  AND AUTHORITIES
18  _____ )

19
            COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel
20
    KAREN P. HEWITT, United States Attorney, and A. DALE BLANKENSHIP, Assistant U.S.
21
    Attorney, and hereby files its Response and Opposition to the motions filed on behalf of defendants
22
    Benjamin Daniel Williams and Nathaniel Gregory Williams, which is based upon the files and
23
    records of this case.
24
    //
25
    //
26
    //
27
    //
28

I

**STATEMENT OF THE CASE**

On January 9, 2008, a federal grand jury for the Southern District of California returned a two-count Indictment, charging Defendant (1) BENJAMIN DANIEL WILLIAMS, and Defendant (2) NATHANIEL GREGORY WILLIAMS, with (1) one count of importation of cocaine, in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2; and (2) one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendant (1) and Defendant (2) were arraigned on the Indictment on January 10, 2008, and both entered a not guilty plea.

II

**STATEMENT OF FACTS**

**A.      IMMIGRATION HISTORY**

Defendant (1) Benjamin Daniel Williams is a United States citizen.

Defendant (2) Nathaniel Gregory Williams is a United States citizen.

**B.      CRIMINAL AND ARREST HISTORY**

Defendant (1) Benjamin Daniel Williams has no known criminal record in the United States.

Defendant (2) Nathaniel Gregory Williams was arrested on October 18, 2004, for domestic violence in violation of California Penal Code § 243(e)(1); he was also arrested on March 4, 2007 for driving under the influence in violation of California Motor Vehicle Code § 23153(A) and § 23153(B); hit and run in violation of California Motor Vehicle Code § 20001(A) and 20002(A) and assault with a deadly weapon in violation of California Penal Code § 245(A)(1). On November 17, 2007, he was arrested for possession of marijuana in violation of California Penal Code § 11357(B).

**C.      INSTANT OFFENSE**

On December 22, 2007, at approximately 12:40 p.m., Defendant (1) Benjamin Daniel Williams  (Benjamin Williams) and Defendant (2) Nathaniel Gregory Williams (Nathaniel Williams) entered the United States from Mexico at the Calexico, California, West Port of Entry.

1    Benjamin Williams was the driver and Nathaniel Williams was the passenger in a 1991 Cadillac
2    deVille with no license plates.  Customs and Border Protection Officer Enrique Hernandez made
3    contact with Benjamin Williams and Nathaniel Williams at the primary inspection booth at vehicle
4    primary lane number 7.  Benjamin Williams presented a California drivers license and stated that
5    he was a United States citizen.  Nathaniel Williams presented a California drivers license and also
6    stated that he was a United States citizen.  Both Defendants gave a negative customs declaration.
7    Officer Hernandez noticed that both Defendants showed signs of nervousness.  Both Defendants'
8    hands were noticeably shaking when they handed Officer Hernandez their drivers licenses, both
9    avoided eye contact while answering questions and both were hesitant to answer Officer
10    Hernandez' questions.

11        Officer Hernandez asked Benjamin Williams where he was going and what was the purpose
12    of his trip to Mexico.  Benjamin Williams responded that he was on his way home to San Diego,
13    and that he has been visiting his girlfriend since yesterday.  Officer Hernandez noticed that the
14    vehicle did not have license plates and asked Benjamin Williams who owned the vehicle.
15    Benjamin Williams responded that it was his girlfriend's vehicle.  Officer Hernandez asked for the
16    vehicle registration and noticed that Benjamin Williams' name was on the registration.  Benjamin
17    Williams also stated that he had the vehicle for a couple of months.  In response to Officer
18    Hernandez' question regarding the frequency of his travels to Mexicali, Benjamin Williams
19    responded that he travels to Mexicali often.  Officer Hernandez noticed that the TECS lane
20    crossing history showed only one prior crossing from Mexicali.  Officer Hernandez then referred
21    the vehicle to secondary for further inspection.

22        In secondary, Customs and Border Protection Officer J. Garcia asked both Benjamin
23    Williams and Nathaniel Williams for their identification and for a customs declaration.  Both
24    Defendant's gave a negative customs declaration.  Officer Garcia requested a canine enforcement
25    officer inspect the vehicle.  During the canine sweep, the canine alerted to the floorboard area of
26    the vehicle.  Both Defendants were escorted to the vehicle secondary office.

27        Officer Garcia searched the vehicle and found a non-factory compartment in the floorboard
28    of the vehicle. Upon opening the compartment, Officer Garcia found 47 packages.  One of the

packages was probed and tested positive for the presence of cocaine. The total weight of the cocaine was 55.52 kilograms. Officer Garcia then placed both Defendants under arrest for importation of cocaine.

### D.    INTERVIEW OF BENJAMIN WILLIAMS

On December 22, 2007, at approximately 5:13 p.m. Immigration and Customs Enforcement Agents Webster, Wood and Ballard, conducted a videotaped interview with Benjamin Williams. Agent Webster advised Defendant of his <u>Miranda</u> rights in English. Defendant waived his rights and agreed to speak with the agents.

Benjamin Williams stated that he and his brother, Nathaniel Williams, drove to Mexicali, Mexico, on December 21, 2007, and stayed at a hotel. Benjamin could not remember the name of the hotel and he did not know where it was located. Furthermore, he could not say where they went or what they did while at the motel. Benjamin Williams stated that a friend picked out the hotel, but he could not provide a name or description of the friend. Benjamin Williams finally stated that there was no friend involved and that he and his brother just drove from their home in San Diego and to Mexicali and stayed at a hotel. Agent Webster confronted Benjamin Williams with inconsistencies in his statement, and Benjamin Williams stated that he thought there was something in the vehicle but would not elaborate on what he thought it was.

Agent Webster began asking direct questions about how and when the Defendants traveled to Mexicali. Benjamin Williams stated that they drove down on December 21. When confronted with the fact that there was fresh bondo on the vehicle and it could not have been driven to Mexicali on December 21, Benjamin Williams hesitated for a few moments then invoked his right to remain silent.

### E.    INTERVIEW OF NATHANIEL WILLIAMS

On December 22, 2007, Agent Webster advised Nathaniel Williams of his <u>Miranda</u> rights in English. Nathaniel Williams waived his rights and agreed to speak with Agent Webster.

Nathaniel Williams stated that his brother asked him to help pick up his car and that they drove to Mexicali on December 21, 2007, to pick it up. Nathaniel Williams stated that this was the second time he had seen the car, the first time was two weeks ago. Agent Webster pointed out

1  the inconsistency with his brother's statement and Nathaniel Williams stated that he would tell the

2  truth.

3        Nathaniel Williams stated that his brother asked him to accompany him to Mexicali,

4  Mexico, to pick up the car he bought.  He stated that an unknown Mexican guy picked them up

5  from their house at around 7:00 a.m. and drove them to Mexicali in a small sedan.  Nathaniel

6  Williams assumed that this was a friend of his brother, but he could not describe what took place

7  during the ride, or what was said during the ride because he slept during the ride to Mexicali.

8  When they arrived in Mexicali, they got into the Cadillac and Nathaniel Williams noticed that the

9  seat did not work properly, and he did not enjoy the fact that his knees were up against the

10  dashboard.  He also stated that he thought it was strange to drive all the way to Mexicali to get a

11  car, but figured that his brother must have gotten a good deal.

12        Nathaniel Williams denied knowing that there was a controlled substance in the car.  He

13  stated that his brother has been acting different and that he does not ask him a lot of questions.  He

14  stated that his brother did work at a Subway restaurant, but that he has not been going to work the

15  last few days.  Agent Webster asked Nathaniel Williams about a receipt found in his wallet for the

16  withdrawal of $4000.00 from a credit card.  Nathaniel Williams responded that he needed the

17  money to pay off other credit card debts because he is unemployed and he wanted a little money

18  for Christmas.  In response to questioning, he also stated that the Cadillac may not have been the

19  vehicle that he saw his brother with few weeks ago.

20        During the interview, Nathaniel Williams asked several times how long he would be in jail.

21  When Agent Webster explained that people are often told that they will be paid around $1500.00

22  for crossing a few kilos of marijuana, that it is easy and if they are caught that nothing bad would

23  happen.  When asked why he and his brother would need to cross a vehicle, he stated that Agent

24  Webster was pretty close to having the right story, then stated that he did not know there were

25  drugs in the car.

26        **F.**    **<u>SPONTANEOUS STATEMENTS OF NATHANIEL WILLIAMS</u>**

27        On December 22, 2007, while Nathaniel Williams was being transported to the Imperial

28  County Jail, he made an unsolicited comment to Agent Ballard.  Nathaniel Williams asked Agent

1    Ballard how much time he was looking at.  Agent Ballard stated that he did not know.  Nathaniel

2    Williams then stated that he heard they would go easy on you for your first smuggling arrest.  He

3    then said "I should have researched it," then quickly added that he did not know why he would

4    have researched it as he would have no reason to.

5                                             **III**

6          **UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES**

7    **A.        THE GOVERNMENT WILL COMPLY WITH DISCOVERY OBLIGATIONS**

8          The Government intends to fully comply with its discovery obligations under <u>Brady v.</u>

9    <u>Maryland</u>, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal

10   Rules of Criminal Procedure.  The Government anticipates that most discovery issues can be

11   resolved amicably and informally, and has addressed Defendants' specific requests below.

12         **(1)        The Defendants' Statements**

13         The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to

14   provide to Defendants the substance of Defendants' oral statements and Defendants' written

15   statements.  The Government has produced all of Defendants' written statements that are known

16   to the undersigned Assistant U.S. Attorney at this date and has also produced all available

17   videotapes and/or audiotapes.  If the Government discovers additional oral or written statements

18   that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be

19   provided to Defendants.

20         The Government has no objection to the preservation of the handwritten notes taken by any

21   of the Government's agents and officers.  <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th

22   Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective

23   government witnesses).  However, the Government objects to providing Defendants with a copy

24   of any rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes

25   where the content of those notes have been accurately reflected in a type-written report.  <u>See</u>

26   <u>United States v. Brown</u>, 303 F.3d 582, 590 (5th Cir. 2002); <u>United States v. Coe</u>, 220 F.3d 573,

27   583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where

28   there are "minor discrepancies" between the notes and a report).  The Government is not required

to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not constitute "statements" in accordance with the Jencks Act.  See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms).  The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment.  Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient).  If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendants.

### (2)    Arrest Reports, Notes and Dispatch Tapes

The United States has provided Defendants with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

### (3)    Brady Material

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendants, however, are not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.  As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality."  Id. at 774-775 (citation omitted).

1    The United States will turn over evidence within its possession which could be used to

2    properly impeach a witness who has been called to testify.

3    Although the United States will provide conviction records, if any, which could be used

4    to impeach a witness, the United States is under no obligation to turn over the criminal records of

5    all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such

6    information, disclosure need only extend to witnesses the United States intends to call in its case-

7    in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini,

8    607 F.2d 1305, 1309 (9th Cir. 1979).

9    Finally, the United States will continue to comply with its obligations pursuant to

10    United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

11    **(4)    Sentencing Information**

12    Defendants claim that the United States must disclose any information affecting

13    Defendants' sentencing guidelines because such information is discoverable under Brady v.

14    Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such

15    disclosure obligation under Brady.

16    The United States is not obligated under Brady to furnish a defendant with information

17    which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady

18    is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already

19    known to the defendant. In such case, the United States has not suppressed the evidence and

20    consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

21    But even assuming Defendants do not already possess the information about factors which

22    might affect their guideline range, the United States would not be required to provide information

23    bearing on Defendants' mitigation of punishment until after Defendants' conviction or plea of

24    guilty and prior to their respective sentencing dates. See United States v. Juvenile Male, 864 F.2d

25    641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant

26    at a time when the disclosure remains in value."). Accordingly, Defendants' demand for this

27    information is premature.

28    //

1    **(5)    Defendants' Prior Record.**

2    The United States has already provided Defendants with a copy of their criminal record in

3    accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

4    **(6)    Proposed 404(b) Evidence and 609 Evidence**

5    Should the United States seek to introduce any similar act evidence pursuant to Federal

6    Rules of Evidence 404(b) or 609, the United States will provide Defendants with notice of its

7    proposed use of such evidence and information about such bad act at the time the United States'

8    trial memorandum is filed.

9    At this time, the United States intends to introduce as evidence any prior apprehensions,

10    immigration contacts or convictions that are released in discovery.

11    **(7)    Evidence Seized**

12    The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

13    allowing Defendants an opportunity, upon reasonable notice, to examine, copy and inspect physical

14    evidence which is within the possession, custody or control of the United States, and which is

15    material to the preparation of Defendants' defense or are intended for use by the United States as

16    evidence in chief at trial, or were obtained from or belong to Defendants, including photographs.

17    The United States, however, need not produce rebuttal evidence in advance of trial. United

18    States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

19    **(8)    Preservation of Evidence**

20    The United States will preserve all evidence to which Defendants are entitled pursuant to

21    the relevant discovery rules.  However, the United States objects to Defendants' blanket request

22    to preserve all physical evidence.

23    The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

24    allowing Defendants an opportunity, upon reasonable notice, to examine, copy and inspect physical

25    evidence which is within the possession, custody or control of the United States, and which is

26    material to the preparation of Defendants' defense or are intended for use by the United States as

27    evidence in chief at trial, or were obtained from or belong to Defendants, including photographs.

28

1    The United States has made the evidence available to Defendants and Defendants' investigators

2    and will comply with any request for inspection.

3          Again, the United States will continue to comply with its obligations pursuant to

4    United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

5          **(9)     Tangible Objects**

6          The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

7    allowing Defendants an opportunity, upon reasonable notice, to examine, inspect, and copy all

8    tangible objects seized that is within its possession, custody, or control, and that is either material

9    to the preparation of Defendants' defense, or is intended for use by the Government as evidence

10   during its case-in-chief at trial, or was obtained from or belongs to Defendants.   The Government

11   need not, however, produce rebuttal evidence in advance of trial.   United States v. Givens, 767

12   F.2d 574, 584 (9th Cir. 1984).

13         **(10)     Evidence of Bias or Motive to Lie**

14         The United States is unaware of any evidence indicating that a prospective witness is biased

15   or prejudiced against Defendants.   The United States is also unaware of any evidence that

16   prospective witnesses have a motive to falsify or distort testimony.

17         **(11)     Impeachment Evidence**

18         As stated previously, the United States will turn over evidence within its possession which

19   could be used to properly impeach a witness who has been called to testify.

20         **(12)     Criminal Investigation of Government Witness**

21         Defendants are not entitled to any evidence that a prospective witness is under criminal

22   investigation by federal, state, or local authorities.   "[T]he criminal records of such [Government]

23   witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976);

24   United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records

25   of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United

26   States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that

27   the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a

28

1    defendant with the criminal records of the Government's intended witnesses.") (citing <u>Taylor</u>, 542

2    F.2d at 1026).

3        The Government will, however, provide the conviction record, if any, which could be used

4    to impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such

5    information, disclosure need only extend to witnesses the United States intends to call in its case-

6    in-chief.  <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>,

7    607 F.2d 1305, 1309 (9th Cir. 1979).

8        **(13)    <u>Evidence Affecting Perception, Recollection, Communication or Truth-Telling</u>**

9        The United States is unaware of any evidence indicating that a prospective witness has a

10   problem with perception, recollection, communication, or truth-telling.

11       **(14)    <u>Witnesses Favorable to the Defendant</u>**

12       As stated earlier, the Government will continue to comply with its obligations under <u>Brady</u>

13   and its progeny.  Other than the material witness in this case, the Government is not aware of any

14   witnesses who have made an "arguably favorable statement concerning the defendant or who could

15   not identify him or who w[ere] unsure of his identity, or participation in the crime charged."

16       **(15)    <u>Statements Relevant to the Defense</u>**

17       To reiterate, the United States will comply with all of its discovery obligations.  However,

18   "the prosecution does not have a constitutional duty to disclose every bit of information that might

19   affect the jury's decision; it need only disclose information favorable to the defense that meets the

20   appropriate standard of materiality."  <u>Gardner</u>, 611 F.2d at 774-775 (citation omitted).  Further,

21   Defendants are not entitled to the Grand Jury transcripts.

22       **(16)    <u>Jencks Act Material</u>**

23       The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified

24   on direct examination, the Government must give the Defendant any "statement" (as defined by

25   the Jencks Act) in the Government's possession that was made by the witness relating to the

26   subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks

27   Act is (1) a written statement made by the witness and signed or otherwise adopted or approved

28   by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's

oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

### (17)    Giglio Information

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

### (18)    Agreements Between the Government and Witnesses

The Government has not made or attempted to make any agreements with prospective Government witnesses for any type of compensation for their cooperation or testimony.

### (19)    Informants and Cooperating Witnesses

The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the Government determines that there is a confidential informant who is a material witness in this case, the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection.

### (20)    Bias by Informants or Cooperating Witnesses

As stated above, the United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendants. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(21)    TECS Reports**

Defendants are not entitled to TECS reports.  Prior border crossings do not fall within the scope of 404(b) unless offered for a purpose consistent with 404(b).

**(22)    Expert Summaries**

The Government will comply with Rule 16(a)(1)(G) and provide Defendants with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions.

**(23)    Residual Request**

The Government has already complied with Defendants' request for prompt compliance with its discovery obligations.  The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendants' residual discovery request.

**B.    NO OBJECTION TO LEAVE TO FILE FURTHER MOTIONS**

The Government does not object to the granting of leave to allow Defendants to file further motions as long as the additional motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion at issue, and the order applies equally to both parties.

//
//
//
//
//
//
//
//
//

1

**VI**

2

<u>**CONCLUSION**</u>

3          For the foregoing reasons, the United States requests that the Court deny Defendant's

4 motions, except where unopposed.

5          DATED: February 10, 2008.

6                                                    Respectfully submitted,

7                                                    KAREN P. HEWITT
                                                     United States Attorney
8
                                                     s/ A. Dale Blankenship
9                                                    A. DALE BLANKENSHIP
                                                     Assistant United States Attorney
10                                                   Attorneys for Plaintiff
                                                     United States of America
11                                                   Email: Dale.Blankenship@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | **UNITED STATES DISTRICT COURT** |
| 2 | **SOUTHERN DISTRICT OF CALIFORNIA** |

|  |  |  |
|---|---|---|
| 3 | UNITED STATES OF AMERICA, | )  Criminal Case No.  08CR0092-DMS |
| 4 | Plaintiff, | ) |
| 5 | v. | )  **CERTIFICATE OF SERVICE** |
| 6 | BENJAMIN DANIEL WILLIAMS (1), NATHANIEL GREGORY WILLIAMS (2), | ) |
| 7 | Defendants. | ) |
| 8 | | |

9

10    IT IS HEREBY CERTIFIED THAT:

11    I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

12    I am not a party to the above-entitled action.  I have caused service of **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:**

13

14    **1. COMPEL DISCOVERY**
      **2. FILE FURTHER MOTIONS**

15

16    on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

17    **Stephen P. White,** spw1@sbcglobal.net

18    **Joseph Milchen,** JMilchen@cox.net

19

20    I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

21    **None**

22

23    the last known address, at which place there is delivery service of mail from the United States Postal Service.

24    I declare under penalty of perjury that the foregoing is true and correct. Executed on February 10, 2008.

25

26    s/ A. Dale Blankenship
      A. DALE BLANKENSHIP

27

28