KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant United States Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619) 235-2757 (Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0092-DMS |
|---|---|---|
| Plaintiff, | ) ) ) | DATE: February 15, 2008<br>TIME: 11:00 a.m. |
| | ) ) | STATEMENT OF FACTS AND |
| BENJAMIN DANIEL WILLIAMS (1),<br>NATHANIEL GREGORY WILLIAMS (2),<br>Defendants. | ) ) ) ) ) | MEMORANDUM OF POINTS AND<br>AUTHORITIES IN SUPPORT OF<br>GOVERNMENT'S MOTION FOR<br>RECIPROCAL DISCOVERY |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and A. DALE BLANKENSHIP, Assistant United States Attorney, and hereby files the attached statement of facts and memorandum of points and authorities in support of government's motion for reciprocal discovery.

//
//
//
//
//
//
//

1

# I
# STATEMENT OF THE CASE

On January 9, 2008, a federal grand jury for the Southern District of California returned a two-count Indictment, charging Defendant (1) BENJAMIN DANIEL WILLIAMS, and Defendant (2) NATHANIEL GREGORY WILLIAMS, with (1) one count of importation of cocaine, in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2; and (2) one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Defendant (1) and Defendant (2) were arraigned on the Indictment on January 10, 2008, and both entered a not guilty plea.

# II
# STATEMENT OF FACTS

**A.    IMMIGRATION HISTORY**

Defendant (1) Benjamin Daniel Williams is a United States citizen.

Defendant (2) Nathaniel Gregory Williams is a United States citizen.

**B.    CRIMINAL AND ARREST HISTORY**

Defendant (1) Benjamin Daniel Williams has no known criminal record in the United States.

Defendant (2) Nathaniel Gregory Williams was arrested on October 18, 2004, for domestic violence in violation of California Penal Code § 243(e)(1); he was also arrested on March 4, 2007 for driving under the influence in violation of California Motor Vehicle Code § 23153(A) and § 23153(B); hit and run in violation of California Motor Vehicle Code § 20001(A) and 20002(A) and assault with a deadly weapon in violation of California Penal Code § 245(A)(1).  On November 17, 2007, he was arrested for possession of marijuana in violation of California Penal Code § 11357(B).

**C.    INSTANT OFFENSE**

On December 22, 2007, at approximately 12:40 p.m., Defendant (1) Benjamin Daniel Williams (Benjamin Williams) and Defendant (2) Nathaniel Gregory Williams (Nathaniel Williams) entered the United States from Mexico at the Calexico, California, West Port of Entry.  Benjamin Williams was the driver and Nathaniel Williams was the passenger in a 1991 Cadillac deVille with no license plates. Customs and Border Protection Officer Enrique Hernandez made contact with Benjamin Williams and Nathaniel Williams at the primary inspection booth at vehicle primary lane number 7.  Benjamin

Williams presented a California drivers license and stated that he was a United States citizen. Nathaniel Williams presented a California drivers license and also stated that he was a United States citizen. Both Defendants gave a negative customs declaration. Officer Hernandez noticed that both Defendants showed signs of nervousness. Both Defendants' hands were noticeably shaking when they handed Officer Hernandez their drivers licenses, both avoided eye contact while answering questions and both were hesitant to answer Officer Hernandez' questions.

Officer Hernandez asked Benjamin Williams where he was going and what was the purpose of his trip to Mexico. Benjamin Williams responded that he was on his way home to San Diego, and that he has been visiting his girlfriend since yesterday. Officer Hernandez noticed that the vehicle did not have license plates and asked Benjamin Williams who owned the vehicle. Benjamin Williams responded that it was his girlfriend's vehicle. Officer Hernandez asked for the vehicle registration and noticed that Benjamin Williams' name was on the registration. Benjamin Williams also stated that he had the vehicle for a couple of months. In response to Officer Hernandez' question regarding the frequency of his travels to Mexicali, Benjamin Williams responded that he travels to Mexicali often. Officer Hernandez noticed that the TECS lane crossing history showed only one prior crossing from Mexicali. Officer Hernandez then referred the vehicle to secondary for further inspection.

In secondary, Customs and Border Protection Officer J. Garcia asked both Benjamin Williams and Nathaniel Williams for their identification and for a customs declaration. Both Defendant's gave a negative customs declaration. Officer Garcia requested a canine enforcement officer inspect the vehicle. During the canine sweep, the canine alerted to the floorboard area of the vehicle. Both Defendants were escorted to the vehicle secondary office.

Officer Garcia searched the vehicle and found a non-factory compartment in the floorboard of the vehicle. Upon opening the compartment, Officer Garcia found 47 packages. One of the packages was probed and tested positive for the presence of cocaine. The total weight of the cocaine was 55.52 kilograms. Officer Garcia then placed both Defendants under arrest for importation of cocaine.

**D.     INTERVIEW OF BENJAMIN WILLIAMS**

On December 22, 2007, at approximately 5:13 p.m. Immigration and Customs Enforcement Agents Webster, Wood and Ballard, conducted a videotaped interview with Benjamin Williams. Agent

3

1 Webster advised Defendant of his Miranda rights in English.  Defendant waived his rights and agreed
2 to speak with the agents.

3    Benjamin Williams stated that he and his brother, Nathaniel Williams, drove to Mexicali,
4 Mexico, on December 21, 2007, and stayed at a hotel.  Benjamin could not remember the name of the
5 hotel and he did not know where it was located.  Furthermore, he could not say where they went or what
6 they did while at the motel.  Benjamin Williams stated that a friend picked out the hotel, but he could
7 not provide a name or description of the friend.  Benjamin Williams finally stated that there was no
8 friend involved and that he and his brother just drove from their home in San Diego and to Mexicali and
9 stayed at a hotel.  Agent Webster confronted Benjamin Williams with inconsistencies in his statement,
10 and Benjamin Williams stated that he thought there was something in the vehicle but would not
11 elaborate on what he thought it was.

12    Agent Webster began asking direct questions about how and when the Defendants traveled to
13 Mexicali. Benjamin Williams stated that they drove down on December 21.  When confronted with the
14 fact that there was fresh bondo on the vehicle and it could not have been driven to Mexicali on
15 December 21, Benjamin Williams hesitated for a few moments then invoked his right to remain silent.

16    **E.    INTERVIEW OF NATHANIEL WILLIAMS**

17    On December 22, 2007, Agent Webster advised Nathaniel Williams of his Miranda rights in
18 English.  Nathaniel Williams waived his rights and agreed to speak with Agent Webster.

19    Nathaniel Williams stated that his brother asked him to help pick up his car and that they drove
20 to Mexicali on December 21, 2007, to pick it up.  Nathaniel Williams stated that this was the second
21 time he had seen the car, the first time was two weeks ago. Agent Webster pointed out the inconsistency
22 with his brother's statement and Nathaniel Williams stated that he would tell the truth.

23    Nathaniel Williams stated that his brother asked him to accompany him to Mexicali, Mexico,
24 to pick up the car he bought.  He stated that an unknown Mexican guy picked them up from their house
25 at around 7:00 a.m. and drove them to Mexicali in a small sedan.  Nathaniel Williams assumed that this
26 was a friend of his brother, but he could not describe what took place during the ride, or what was said
27 during the ride because he slept during the ride to Mexicali.  When they arrived in Mexicali, they got
28 into the Cadillac and Nathaniel Williams noticed that the seat did not work properly, and he did not

4

enjoy the fact that his knees were up against the dashboard. He also stated that he thought it was strange to drive all the way to Mexicali to get a car, but figured that his brother must have gotten a good deal.

Nathaniel Williams denied knowing that there was a controlled substance in the car. He stated that his brother has been acting different and that he does not ask him a lot of questions. He stated that his brother did work at a Subway restaurant, but that he has not been going to work the last few days. Agent Webster asked Nathaniel Williams about a receipt found in his wallet for the withdrawal of $4000.00 from a credit card. Nathaniel Williams responded that he needed the money to pay off other credit card debts because he is unemployed and he wanted a little money for Christmas. In response to questioning, he also stated that the Cadillac may not have been the vehicle that he saw his brother with few weeks ago.

During the interview, Nathaniel Williams asked several times how long he would be in jail. When Agent Webster explained that people are often told that they will be paid around $1500.00 for crossing a few kilos of marijuana, that it is easy and if they are caught that nothing bad would happen. When asked why he and his brother would need to cross a vehicle, he stated that Agent Webster was pretty close to having the right story, then stated that he did not know there were drugs in the car.

### F.  SPONTANEOUS STATEMENTS OF NATHANIEL WILLIAMS

On December 22, 2007, while Nathaniel Williams was being transported to the Imperial County Jail, he made an unsolicited comment to Agent Ballard. Nathaniel Williams asked Agent Ballard how much time he was looking at. Agent Ballard stated that he did not know. Nathaniel Williams then stated that he heard they would go easy on you for your first smuggling arrest. He then said "I should have researched it," then quickly added that he did not know why he would have researched it as he would have no reason to.

### III

### GOVERNMENT'S MOTIONS

### A.  UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY

On January 11, 2008, Defendant (1) Benjamin Williams filed a motion to compel discover. On January 16, 2008, Defendant (2) Nathaniel Williams filed a motion to join the motion to compel discovery. The Government has voluntarily complied and continues to comply with the requirements

5

1  of Rule 16(a). To date, the Government has provided 39 pages of discovery, 1cd and 1 dvd to both
2  Defendants. The United States, pursuant to Rule 16(b), hereby requests both defendants to permit the
3  United States to inspect, copy, and photograph any and all books, papers, documents, photographs,
4  tangible objects, or make copies of portions thereof, which are within the possession, custody or control
5  of defendants and which they intend to introduce as evidence in their case-in-chief at trial.

6  The United States further requests that it be permitted to inspect and copy or photograph any
7  results or reports of physical or mental examinations and of scientific tests or experiments made in
8  connection with this case, which are in the possession or control of the defendants, which they intend
9  to introduce as evidence-in-chief at the trial or which were prepared by a witness whom the defendants
10 intend to call as a witness. The United States also requests that the court make such orders as it deems
11 necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which
12 it is entitled.

13 Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all
14 witnesses, except the defendant. The time frame established by the rule requires the statement to be
15 provided after the witness has testified, as in the Jencks Act. Therefore, the United States hereby
16 requests that defendants be ordered to supply all prior statements of defense witnesses by a reasonable
17 date before trial to be set by the court. This order should include any form these statements are
18 memorialized in, including but not limited to, tape recordings, handwritten or typed notes and/or reports.
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

# IV

# **CONCLUSION**

For the foregoing reason, the Government respectfully requests that its motions for reciprocal discovery.

DATED: February 10, 2008.

                                      Respectfully Submitted,

                                      KAREN P. HEWITT
                                      United States Attorney

                                      <u>S/ A. Dale Blankenship</u>
                                      A. DALE BLANKENSHIP
                                      Assistant United States Attorney
                                      Attorneys for Plaintiff
                                      United States of America
                                      Email: Dale.Blankenship@usdoj.gov

|   |   |
|---|---|
| | **UNITED STATES DISTRICT COURT** |
| | **SOUTHERN DISTRICT OF CALIFORNIA** |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0092-DMS |
| Plaintiff, | ) ) ) | **CERTIFICATE OF SERVICE** |
| v. | ) ) | |
| BENJAMIN DANIEL WILLIAMS (1),<br>NATHANIEL GREGORY WILLIAMS (2),<br>Defendants. | ) ) ) ) | |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **NOTICE OF MOTION AND MOTION FOR RECIPROCAL DISCOVERY** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Stephen P. White,** spw1@sbcglobal.net

**Joseph Milchen,** JMilchen@cox.net

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 10, 2008.

                                      s/ A. Dale Blankenship<br>
                                      A. DALE BLANKENSHIP